KEVIN V. RYAN (SBN 118321)
United States Attorney
JOANN SWANSON (SBN 88143)
Chief, Civil Division
ABRAHAM A. SIMMONS (SBN 146400)
Assistant United States Attorney

    450 Golden Gate Avenue, 10th Floor
    San Francisco, California 94102-3495
    Telephone:  (415) 436-7264
    Facsimile:   (415) 436-6748
    Email:      abraham.simmons@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NAOMI WALTON,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES MARSHALS SERVICE,<br>MARC A. FARMER, Chief, Judicial<br>Protective Services-Judicial Security<br>Division; LOUIS CHELTON, M.D.,<br>Division of Federal Occupational Health,<br>Department of Health & Human Services;<br>UNITED STATES DEPARTMENT OF<br>HEALTH and HUMAN SERVICES,<br>BENIGNO G. REYNA, Director, United<br>States Marshals Service.<br><br>        Defendants. | No. C 03-1460 SI<br><br>E-FILING CASE<br><br>SUPPLEMENTAL DECLARATION OF<br>LOUIS G. CHELTON, III, M.D.<br>IN SUPPORT OF FEDERAL<br>DEFENDANTS' MEMORANDUM<br>IN OPPOSITION TO<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>Date:    January 7, 2004[1]<br>Time:   9:00 a.m.<br>Place:   Courtroom 10, 19th Fl.<br>Before:  Hon. Susan Illston |

---

[1] Federal Defendants have moved this Court for an order vacating the January 7, 2004 hearing date.

Exhibit F

1         I, Louis G. Chelton, declare as follows:

2   1.  I am a Reviewing Physician for Law Enforcement Medical Programs, a department

3 of Federal Occupational Health, which is a component of the U.S. Public Health Service.

4 Since January of 2002, I have performed the duties of a Reviewing Physician as an

5 independent contractor through a staffing agency called Occupational & Environmental

6 Medicine, Inc. I am not an employee of the federal government.

7   2.  On November 23, 2004, I completed a declaration in the case of *Ronald Strolberg, et

8 al., v. Akal Security, Inc., et al.*, No. 03-0004-DOC (D. Idaho, filed January 2, 2003). I

9 understand that a redacted version of the declaration is being submitted in this case. I

10 submit this supplemental declaration to address events that may be particular to Naomi

11 Walton who I understand is not a plaintiff in the Idaho case.

12   3.  In my capacity as a reviewing physician, I conduct occupational medical reviews for

13 several agencies. Most of my work is for the U.S. Marshals Service's Court Security

14 Officer (CSO) program. In my role as a reviewing physician for the CSO program, I have

15 reviewed thousands of medical examinations and medical records pertaining to incumbent

16 CSOs. Of these, I would estimate that hundreds had hearing impairments. Although I do

17 not have exact numbers, I can say with certainty that I disqualified only a small

18 percentage of individuals with hearing impairments. In most cases, the hearing

19 impairment was not severe enough to disqualify the individual under the hearing standard

20 we were utilizing and, in my opinion, did not prevent the individual from performing the

21 essential functions of the CSO position. Conversely, during my time as a reviewing

22 physician with FOH, I qualified hundreds of CSOs with hearing impairments.

23   4.  When considering whether a CSO is qualified, I am concerned only with whether the

24 person can perform the essential functions of a CSO. CSOs must possess and maintain

25 adequate hearing in order to carry out their assigned duties in a safe and effective manner.

26 The safety of the federal judiciary, court personnel, and the public depends on CSOs'

27 ability to hear, localize, discriminate, recognize, and/or understand a variety of

28 environmental and speech sounds. CSOs must be able to clearly understand directions in

1  times of crisis, hear communications at a level of sound that does not inform persons
2  causing an incident of the CSOs' response plans and discern the direction of a disturbance
3  or detect an approaching threat.
4  5.   When considering whether a CSO can perform these essential functions I do not
5  consider other inquiries such as whether the CSO can perform other law enforcement jobs
6  or whether the CSO is limited in some activity that non-CSOs perform in their daily lives.
7  Also, I make no judgment regarding the significance of the findings with respect to such
8  other issues. Instead, I look at all of the information that is supplied in order to make an
9  assessment regarding whether the individual CSO can meet all of the essential functions
10 of the CSO job. On occasion, my review results only in a determination that additional
11 information must be provided before I can draw any conclusions regarding the ability of a
12 CSO to perform the essential functions of the job. Under such circumstances, I write to
13 the USMS and request that they forward a request to the CSO's employer (or potential
14 employer) for more information.
15 6.   Based on records that have been provided to me, I was the reviewing physician who
16 recommended disqualification of the plaintiff in this case. I concluded that Naomi
17 Walton was not medically qualified to perform the essential functions of the CSO
18 position due to a hearing impairment. Specifically, Ms. Walton did not meet the standard
19 for the unaided pure-tone audiogram tests and then did not meet the standard for the
20 unaided functional hearing tests. I based that conclusion on my review of the information
21 contained in Ms. Walton's annual medical examination and medical records she provided
22 in response to my request for additional information.
23 7.   Attached to this declaration as Exhibit 1 is the Medical Review Form that I
24 completed on January 17, 2002. The review form notes that I had reviewed documents
25 from a medical examination Ms. Walton took on October 19, 2001. The record notes that
26 Ms. Walton's "pure tone audiogram did not meet the required standard (75 db down @
27 500 Hz, 70 db down @ 1000 Hz, 65 db down at 2000 Hz)." The pure tone audiogram is a
28 test that measured Ms. Walton's ability to detect sound. The results of her audiogram

1 showed that there was a disparity between her left and right ear in her ability to detect
2 sound. This disparity would impact her ability to perform the essential job function of
3 localizing sound.
4 8. As noted on my January 17, 2002 review, I made no conclusion regarding whether
5 Ms. Walton was able to perform the essential function of the job of CSO at that time. This
6 is true even though Ms. Walton did not meet the standard for the test. Instead, I requested
7 additional information intended to assist me in making an evaluation of her ability to meet
8 the standard. I completed the Medical Review Form and requested that she undergo more
9 complete testing. I described the precise tests that I requested Ms. Walton take and noted
10 that a medical determination was deferred pending further documentation. My signature
11 appears on the second page of the form under the title Judicial Security Division
12 Reviewing Physician. I forwarded the form to the Marshal's Service for follow up.
13 9. Attached to this declaration as Exhibit 2 is my final medical review form dated
14 May 31, 2002. The form notes that I had available to me at that time Ms. Walton's
15 original review of October 19, 2001, and additional information that was submitted on her
16 behalf. Such additional information included Ms. Walton's audiogram completed April
17 5, 2002. As a result of my review of the additional audiogram, I concluded that Ms.
18 Walton could not meet an essential job function for the position of CSO. Specifically, I
19 concluded that she could not localize sound.
20 10. I have concluded that allowing Ms. Walton to continue working as a CSO would
21 have placed at significant risk the safety of the courthouse to which she was assigned, the
22 people who work at that courthouse, and the public. As is true with each of my reviews,
23 this determination is an individualized assessment considering the information available
24 to me in Ms. Walton's case. I am aware of no additional circumstances that would
25 mitigate the fact that Ms. Walton's hearing is below the standard necessary for her to
26 perform the job of CSO safely. Accordingly, my signature appears on the May 31, 2002
27 Medical Review Form concluding that Ms. Walton is "not medically qualified to perform
28 the essential functions of the job."

11. I am aware that according to the report prepared by Dr. Richard Miller and the consultations that the FOH has had with audiologists that hearing aides would not resolve the issues raised by Ms. Walton's inability to meet the standard. First, the standard itself does not permit the use of hearing aids. CSOs must meet a minimal hearing standard without hearing aids and then, if they wear hearing aids must be tested using the aids to ensure that the aids do not degrade the ability to hear. Second, use of hearing aids would not correct Ms. Walton's inability to localize sound.

I declare under penalty of perjury under the laws of the United States that the above is true and accurate. Executed this 17th day in December, 2004, in Atlanta, Georgia.

/s/
Louis G. Chelton, III, M.D.

# Judicial Security Division
## Medical Review Form

LE Incumbent Name: **Naomi Walton**   Date of Birth: **9/12/1935**   Age: **66**
SSN: **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**   LE Incumbent **Court Security Officer**
Examining Facility: , ,
Circuit 9

This review is based on:

Report of Medical Examination:   Date: **10/19/2001**
Supplemental Medical Information:   Date:

**YOUR STATUS IS: Medical determination deferred pending further documentation**

Incumbent has medical findings which may hinder safe and efficient performance of essential job functions. Please provide the following detailed or diagnostic medical information. Per agency request, if further information is not provided, a determination will be made based on available medical information. The requested information should be provided within 30 days of review date below. Send medical information to:

Richard Miller, MD
FOH - Law Enforcement Medical Programs
100 Alabama St., Suite 3R10
Atlanta, GA 30303

Your pure tone audiogram did not meet the required standard (75 db down @ 500 Hz, 70 db down @ 1000 Hz, 65 db down at 2000 Hz). See an ear, nose and throat (ENT) physician or audiologist for further functional hearing tests. It is recommended that you have these tests performed after a 14 hour quiet period (no loud noises such as gunfire, motors, highway driving, radio earphones). The evaluation MUST include the following. Be certain to fax a copy of these tests to your service provider prior to your appointment in order to be absolutely sure that the provider can perform these tests as requested:

Testing should be done on an audiometer meeting ANSI Standard S3.6 (1969, reaffirmed 1996), in a test chamber meeting ANSI Standard S3.1. Both audiometer calibration and booth certification should be current within one year. Testing should be done using insert phones, TDH-39 earphones, or TDH-49 earphones. Sound field calibration shall meet the specifications of ISO 8253-2, 1992. Speech testing shall use recorded lists at the specified level. The evaluation must include:

 a) Pure tone air conduction audiogram at the frequencies 250, 500, 1000, 2000, 3000, 4000, 6000 and 8000 Hz. Bone conduction thresholds at 500, 1000, 2000, 3000 and 4000 Hz, with appropriate masking as needed.
 b) Tympanometry, including acoustic reflex testing (ipsilateral stimulation at 500, 1000, 2000, and 4000 Hz.).
 c) Unaided Speech Reception Threshold for each ear under headphones.
 d) Unaided Speech Recognition in quiet for each ear under headphones. Start at +40 dB SL, and present recorded version of NU-6 full list. If client achieves a score of 90% or better, this phase of the test may be terminated and results reported. If a score of less than 90% is obtained, vary presentation level either up or down as appropriate to achieve maximum score. Report %/Intensity function.
 e) Unaided Sound Field Speech Recognition in Noise. With client facing the speaker, using recorded NU-6 full list in speech noise. Begin at a presentation level of 60 dB HL with 50 dB HL of speech noise. If a score of 50% or better is obtained, test may be terminated. If a score of less than 50% is obtained, vary presentation level up or down to achieve maximum score. Patient may move his/her head to maximize performance. Signal-to-noise ratio of + 10 dB must be maintained. Report %/Intensity function.

**Medical determination can not be made due to incomplete examination requirements**

Please return to your examining facility for completion of the following medical information. The requested information should be provided within 30 days of review date below. Send medical information to:

Merits Record ID: 2029667

LE Incumbent Name: **Naomi Walton**         Date of Birth: **9/12/1935**   Age: **66**
SSN: **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**                         LE Incumbent **Court Security Officer**
Examining Facility: , ,
Circuit 9

This review is based on:

Report of Medical Examination:              Date: 10/19/2001
Supplemental Medical Information:           Date:

Richard Miller, MD
FOH - Law Enforcement Medical Programs
100 Alabama St., Suite 3R10
Atlanta, GA 30303

Lab - Urinalysis Results - no urine blood test

**Recommendations**

*The following medical findings are noted for you and your personal physician. No follow-up information is required by the Agency.*

1. Your blood pressure was elevated at 142/92 during your examination. You should consider seeing your personal physician to evaluate this condition.

2. Your weight is excessive with a body mass index of 34.73 (ideal is less than 27). Consult your physician regarding a diet/exercise program.

Review Date: 01/17/2002
Judicial Security Division Reviewing Physician:

L. Chelton, MD, MPH

Merits Record ID: 2029667

## Medical Review Form

LE Incumbent Name: **Naomi Walton**
SSN: **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**
Examining Facility: Circuit 9 DISTRICT 11, SAN FRANCISCO (AKAL)

Date of Birth: **9/12/1935**   Age: **66**
LE Incumbent **Court Security Officer**

This review is based on:

Report of Medical Examination:       Date: 10/19/2001
Supplemental Medical Information:    Date: 4/5/2002

**YOUR STATUS IS: Not medically qualified to perform the essential functions of the job**

The following medical condition(s) poses a significant risk to the health and safety of yourself and/or others in the performance of essential job functions. Medical follow-up, if requested, and any restriction of duties are listed below. Send medical information to your employer.

You have a significant hearing impairment according to the results of the tests provided by you from Gould Medical Foundation. According to the test results, you have only one functioning ear. With only one functioning ear, you are unable to localize the direction of sound, an essential job function. Hearing aids may malfunction or become dislodged in critical situations. Your job requires the ability to detect where sound is coming from. Your inability to do so poses a significant risk to the health and safety of yourself, other law enforcement officers, and the public.

Review Date: 05/31/2002
Judicial Security Division Reviewing Physician:

L. Chelton, MD, MPH