UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| Ramundo Ruiz, | § | CIVIL ACTION NO. 6:07-CV-56 |
|     Plaintiffs | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | |
| U.S. Protect and Michael Mukasey, | § | |
| Attorney General of the United States, | § | |
|     Defendants | § | A JURY IS DEMANDED |

Plaintiff's First Amended Complaint

If Ramundo Ruiz had been judged on the quality of his work, he would still be serving as a Court Security Officer and guarding the federal judiciary. His work was recognized as "distinguished" by the U.S. Marshal's Service only six months before he was dismissed. Sadly, although he performed his job as a Court Security Officer with distinction, he lost his job because of disability discrimination.

PARTIES

1.  The plaintiff Ramundo Ruiz is an individual who resides in Victoria, Victoria County, Texas.

2.  The defendant U.S. Protect, is a Maryland corporation doing business in Texas, and has appeared in this lawsuit.

3.  The defendant Michael Mukasey is currently the United States Attorney General and has likewise appeared in this lawsuit.

## JURISDICTION

4. This case is brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. This Court has jurisdiction of this case according to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

5. Venue is invoked pursuant to 28 U.S.C. § 1391.

## STATEMENT OF THE PLAINTIFFS' CASE

6. The plaintiff, Ramundo Ruiz, is well-qualified to guard the federal judiciary. He served in the United States Army for more than twenty years and often was called upon to train soldiers, including training them to be military police. In his 1985 annual review, the rating officer wrote, "Master Sergeant Ruiz is one of the most outstanding noncommissioned officers I have had the opportunity to serve with. He has performed all of his assigned task[s] above and beyond possible expectations." This kind of assessment was repeated numerous times. In his 1981 annual review, for example, the rating officer wrote that Ruiz was the most outstanding first sergeant he had worked with in 18 years of military service and also stated, "Ruiz is a true professional whom few could equal but all should emulate."

7. After his distinguished military service, Ruiz went to work in the field of civilian law enforcement. He worked with the Victoria County Sheriff's Department for more than a decade, rising from detention officer to the level of captain in the department. Then, he worked as an assistant warden and later warden of two correctional facilities.

8. In February 2002, Mr. Ruiz was hired to work as a Court Security Officer by Akal Security, Inc., a contractor of the United States Marshal's Service. Akal had been hired to provide court security officers at federal courthouses.

9. Before he started working for the Marshal's Service, Mr. Ruiz was informed that he needed to undergo a physical in connection with his job. He took the physical and was thereafter put to work as a Court Security Officer at the federal courthouses in Victoria, Texas and Corpus Christi, Texas. The three District Judges whom he served, John D. Rainey, Hayden Head, and Janis Jack never had any issue whatsoever regarding his qualifications for the job or his hearing ability. He was required to take physicals on an annual basis and was told that he passed these as well. Before he was hired, the hearing tests were taken with hearing aids in place. In 2005, however, he was required to remove his hearing aids when taking the annual physical. It was in this condition that the defendants chose to assess his hearing skills.

10. In 2006, U.S. Protect received the contract to provide court security at the federal courthouse in Victoria, Texas. Shortly before the company took over, Mr. Ruiz received an award from the U.S. Marshal's Service for his excellent work.

11. On October 23, 2006, Mr. Ruiz was terminated from his job, not because of any performance problem, but because of his disability. The defendant, U.S. Protect, told him that he was being terminated because the United States Marshal's Service had determined that he was substantially impaired in his ability to hear. The defendants branded him as having a significant conversational hearing loss. The USMS physician filled out a form that documented this perception, and that form was forwarded to Washington D.C. This form was acted upon and the USMS used it in order to remove him from his position as a CSO. This perception was inaccurate since he never had any hearing deficits while working for the defendants. In fact, he never had any problem with his job performance at all.

12. The government physician who made the recommendation to disqualify Mr. Ruiz recorded on an official form that he had a "significant hearing loss" and that hearing aids "are not able to restore those with sensori-neural hearing loss to the level of normal function." Ironically, however, the government does not require that Court Security Officers have anything close to normal hearing. And, with hearing aids, Mr. Ruiz was certainly capable, as the U.S. Marshal's Service itself recognized. Paradoxically, Defendants do not allow hearing aids to be utilized during their assessment of the CSOs, but they do allow them on the job – for only for those CSOs who do not need them to pass the tests.

13. The demand that Mr. Ruiz take a hearing test without a hearing aid is a screening criteria that screens out the disabled, which is per se unlawful discrimination. As is the decision of U.S. Protect to contract with a party which has the power to discriminate against U.S. Protect's own employees. The ADA specifically declares that both of these actions are per se unlawful discrimination. See 42 U.S.C. 12112(b)(2) and 12112(b)(6).

14. Even though U.S. Protect knew that Mr. Ruiz was eminently qualified to continue working as a CSO, it fired him based on his disability because it has surrendered the right to do otherwise to the USMS. Specifically, US Protect surrendered its employee to disability discrimination by virtue of its contractual arrangement with the government. It even coded him as ineligible for rehire.

Disability Discrimination

15. The plaintiff is a qualified individual with a disability. The plaintiff performed his job as a Court Security Officer with distinction, but was fired because of a disability. He has an actual disability as he was assessed by Defendants. He was regarded as having a disability by

them, and was discharged because of a record of a disability.  U.S. Protect's conduct violates the Americans with Disabilities Act, which prohibits discrimination in employment on the basis of disability.  See 42 U.S.C. 12112(b)(2).  Specifically, US Protect cannot contract out of its obligations under the disability law by allowing the government to make a decision that is illegal under the ADA and then blindly going along with it.  The government's conduct violates the Rehabilitation Act, which also prohibits disability discrimination.  The government cannot legally implement a medical test that tends to screen out those with disabilities as it did here, unless such a test is job related and justified by business necessity, which it most certainly is not. 42 U.S.C. 12112(b)(6) and 29 U.S.C. 791 et seq.  Not only does the business necessity defense fail when CSOs are allowed to wear hearing aids on the job, but the government knows that such a screening technique is unlawful, as best evidenced by the fact that it sues police departments who utilize this screening device.  The plaintiff is a qualified individual with a disability and was discriminated against because of such disability.

16.    In imposing a requirement that Plaintiff may not use hearing aids for medical testing (even though allowed on the job), the Defendants have violated the ADA and the Rehabilitation Act , respectively.  These statutes prohibit an employer from using qualification standards that screen out or tend to screen out those with disabilities.   42 U.S.C. 12112(b)(6) and  29 U.S.C. 791 et seq.  Defendants' conduct in discharging Plaintiff constitutes discrimination in employment on the basis of a disability or perceived disability or the record of a disability. Defendants chose to evaluate his hearing without his mitigating measure, and of course, Plaintiff has an actual disability in hearing under the state that the defendants chose to test him.  The government doctor, due to perception of a serious hearing impairment,  filled out a

record which was sent to the USMS, which determined to remove him because of that record of a disability.

17. The plaintiff timely filed a charge of discrimination to challenge the disability discrimination he suffered by U.S. Protect and the government. He obtained a right to sue letter from the Equal Employment Opportunity Commission on his charge of discrimination against U.S. Protect and timely filed this lawsuit to vindicate his rights. In addition, the plaintiff received a right to sue letter from the Equal Employment Office of the Justice Department on his claim against the federal government and timely filed this lawsuit to vindicate his rights.

## Damages

18. The damages suffered by the plaintiff include lost wages and benefits as well as compensatory damages for the injuries suffered at the hands of the defendants, including, but not limited to, mental anguish.

19. Further, because U.S. Protect's actions were of the sort that render the imposition of exemplary damages appropriate, the plaintiff is entitled to an award of these damages, which he seeks.

## RELIEF REQUESTED

The plaintiff asks this court to enter a judgment:

1. Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act and the Rehabilitation Act of 1973;

2. Enjoining and permanently restraining these violations of law;

3. Directing the defendants to pay the plaintiff actual and compensatory damages that he suffered, past and future;

4.  Directing the defendant, U.S. Protect, to pay plaintiff exemplary damages for its conduct in an amount as yet to be ascertained;

5.  Awarding plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

6.  Awarding plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

7.  Awarding plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

8.  Awarding plaintiff such other relief, legal or equitable, as may be warranted.

                              Respectfully submitted,

                              s/ John Griffin
                              Federal I.D. No. 2238
                              State Bar No. 08460300
                              203 North Liberty Street
_____Victoria, Texas  77901
                              (361) 573-5500 – Telephone
                              (361) 573-5040 – Telecopier

                              **Attorney in charge for Plaintiff**

                              Katherine L. Butler
                              Federal I.D. No. 4734
                              State Bar No. 03526300
                              1007 Heights Boulevard
                              Houston, Texas  77008
                              (713) 526-5677
                              Fax (713) 526-5691

**Certificate of Service**

    I certify that a true and correct copy of this document has been served upon the defendants via the electronic filing system of the United States District Court for the Southern District of Texas on January 15, 2008

                                                  /s/ Katherine L. Butler